**FILED**

MAY 0 7 2025

CLERK U.S. DISTRICT COURT
WEST DIST OF PENNSYLVANIA

*No related*
*Paid*
*1544*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

**ISAAC STEVEN PENASCINO**
133 Laurie Drive
Pittsburgh, PA 15235
(412) 616-2885
    *Plaintiff,*

v.

**TRENT COPE**
245 Edith Street
Pittsburgh, PA 15211
(412) 694-4766
*In his individual capacity*

**FAITH M MUSSELWHITE**
Officer #306938
co/ City of Pittsburgh
830 E. Warrington Ave.
Pittsburgh, PA 15210
(412) 488-8326
*In her Individual & Official capacities*

**BENJAMIN GERY**
c/o City of Pittsburgh
830 E. Warrington Ave.
Pittsburgh, PA 15210
(412) 488-8326
*In his Individual & Official capacities*

**THE CITY OF PITTSBURGH**
414 Grant St.
Pittsburgh, PA 15219
(412) 255-262
*In its Official Capacity*

**THE COMMONWEALTH OF PENNSYLVANIA**
Attn: Administrative Office of Pennsylvania Courts
601 Commonwealth Ave.   Suite 1500
P.O. Box 61260 Harrisburg, PA 17106
(717) 231-3300
*In its Official capacity*
    *Defendant(s) (et. al),*

Civil Action No.: 2:25-cv-632

Judge:

Magistrate Judge:

## COMPLAINT

This is a Civil Rights action seeking redress for the violation of State and Federal Laws and Policing Regulations leading to the deprivation of Isaac Steven Penascino's fundamental rights guaranteed, inter alia, by the Bill of Rights, those, evermore upheld and protected, as a citizen of this free nation and state, respectively, by the legislation of the United States of America, and the Commonwealth of Pennsylvania ("Commonwealth"), including the Constitution of the United States of America, the Constitution of the Commonwealth of Pennsylvania, Commonwealth of Pennsylvania law, and violation of policies and procedures of policing activities, adopted by the City of Pittsburgh Bureau of Police set forth in the Manual of Procedural Order and Code of Ethics of Police, of or relating to incidents associated to Docket No.: CP-02-CR-0003837-2024 filed in the Court of Common Pleas of Allegheny County - Criminal Division and Docket No.: FD 24-000955-055 filed in the Court of Common Pleas of Allegheny County - Family Division.

Plaintiff, Isaac Steven Penascino, had committed no wrongdoing, yet, was subjected to injustices relating to the violation of Civil Rights, including, the Fourth, Fifth, and Sixth Amendments, relating to false imprisonment; unlawful searches & seizures, right to due process; and trial by jury, violation of State and Federal laws including theft or destruction of property; retaliation; harassment; negligence; perjury; and violation of police regulations including discrimination, displayed in language or conduct demonstrating bias based on factors including race; ethnicity; socio-economic status; sex; sexual orientation; or gender identification resulting in irreparable injuries and damages, both pecuniary and nonpecuniary, including emotional and psychological injuries, including mental anguish, humiliation, emotional distress, loss of enjoyment of life, and loss of wages/earning potential, incurred to the property and persons, of

2

Isaac Steven Penascino, as a direct result of the dishonesty, falsification, and other unlawful conduct by the Defendants, Trent Cope, Faith Musselwhite, Benjamin Gery, the City of Pittsburgh and the Commonwealth of

On or about May 19, 2024, Trent Cope ("Cope") acted in a retaliatory manner, intentionally, and illicitly, having Isaac Steven Penascino ("Penascino") removed from the Residence ("Residence"), located at 245 Edith Street, Pittsburgh, Pennsylvania, whereby, Cope consciously and recklessly filed a false police report, frivolous in nature, due to it's grossly negligent manner without basis in law or fact, or without probable cause and made primarily for a purpose, other than that of reporting a violation, in which he fabricated claims, many of which contained inconsistencies and contradictions, alleging to have been assaulted by Penascino, leading City of Pittsburgh Bureau of Police ("PBP") Officers Faith Musselwhite ("Musselwhite") and Benjamin Gery ("Gery"), acting under color of Commonwealth law, to wrongfully arrest Penascino, falsely charging him with (1) count, Simple Assault - Misdemeanor II, and then subjecting him to false imprisonment, upon taking him to Allegheny County Jail, where he remained illegally held against his will, for 15 hours, during which Cope served Penascino with an untruthful Protection From Abuse Order ("PFA"), which, unwarrantedly, ordered for the immediate eviction of Penascino from the Residence, enacted as Cope's method of foregoing the parameters required to legally conduct an Eviction proceeding, given the lengthy timeline associated to completion of that process.

The wrongful arrest of Isaac Steven Penascino was the direct result of Trent Cope's intentional and illicit, falsified reporting, in tandem with Officers Faith Musselwhite and Benjamin Gery's misconduct, both, whom were negligent and lacked proper due-diligence when investigating and responding to the situation, engaging in conduct in violation of Civil Rights,

and in violation of the standards of the PBP per the the Manual of Procedural Order and Code of Ethics. Penascino was, thereafter, subjected to injustice of Civil Right & Liberties, by the District Attorney's Office of Allegheny County, who represented the Commonwealth of Pennsylvania during the subsequent legal prosecution of the criminal charge (1) Count Simple Assault - Misdemeanor II, alleged in Docket #: CR 24-000955-055, in response to Cope's erroneous claims The acts and conduct of the Defendants have caused injuries and damages to Isaac Steven Penascino, which have continued to negatively impact Penascino's livelihood, with impact that will continue for the foreseeable and indefinite future, given the traumatic and malicious nature of events, that are considered to be, otherwise, unjust, unethical, and unnecessary. Further, Trent Cope's abuse of a civil privilege, as crucial and scare, as Emergency Services, need not be taken advantage of unnecessarily, such in the manner of which Cope unnecessarily occupied emergency response personnel, both Police and Paramedics, of which about 700 law enforcement officers and nearly 200 paramedics/EMTS, respectively, compose the just nearly 1,000 Emergency Response Personnel responsible for the some 300,000 residents, within the city limits of the City of Pittsburgh that may, otherwise, had been in a dire need of Emergency services.

Ultimately Penascino was wrongfully arrested, rendered defenseless against prejudicial prosecution of the law. The subsequent filing of an Emergency Protection from Abuse Order, which was composed of untruthful and misleading statements resulted in the immediately wrongful eviction of Penascino, from the Residence, achieved via illicit means, causing injury/damages to the persons and property of Isaac Steven Penascino, including the loss of wages/earning potential.

This complaint, further, seeks redress, with regards to the 11 months that followed the alleged incident, in which Isaac Steven Penascino would continue to defend his position, Not Guilty, in a series of court hearings, prolonged with numerous continuances, 7 altogether, from the first Notice of Non-Jury Trial to the Case being closed, having moved from the Magisterial District Courts, as Docket No. MDJ-5003-CR-2656-2024 to the Court of Common Pleas-Criminal Division as Docket No. CP-02-CR-3837-2024, representing himself, Pro Se, until the Pre-Trial Conference, when Penascino opted for representation, by private counsel, taking on Ketchel Law Firm to defend him, under the legal advice of attorney Thomas McKinley, an associate of the firm.

As the legal process played out, the Prosecution, led by the District Attorney, of Allegheny County ("DA"), in the Court of Common Pleas, of Allegheny County, whom had represented the Commonwealth of Pennsylvania, deprived Isaac Steven Penascino of constitutionally-actionable Civil Rights, in a manner, that recklessly and negligent sought to usurp the Plaintiff's rights and liberties, by denying him the right to Due Process of law.

Penascino attempted to evoke his 6th Amendment Right, and opted for a Jury Trial, which he insisted upon, himself. Still, Penascino received a Notice of Non-Jury Trial. At one of the final sessions, the DA, representing the Commonwealth, told Penascino, that if he wished to proceed with his request of a Jury Trial, the charge, (1) count, Simple Assault - Misdemeanor II, would be reduced to a Summary Offense, thereby, removing the necessity or possibility to hold a Jury Trial, an action that would serve no purpose other than to rescind Penascino of his Right to Due Process. Penascino was then coerced by the DA into signing, on record, an agreement to complete a court-approved Alternative Dispute Resolution Program ("ADR"), i.e Anger Management, by the next scheduled court appearance, which upon completion, would result in

the charge being dismissed, and, thereafter, expunged. A failure to complete the ADR, per the DA, would, otherwise, result in a default "Guilty" plea to a summary offense, i.e Disorderly Conduct, that Penascino was not responsible for committing. Penascino successfully completed the Anger Management Program through the Domestic Outreach Corporation on March 7, 2025, at his personal expense, despite it being a superfluous sanction, provided his maintained innocence. The criminal charge against Penascino, (1) count, Simple Assault, Misdemeanor II, was dismissed March 31, 2025, without prejudice, pending expungement.

However, it shall not go unnoticed that this outcome was only obtained by a concerted effort and considerate allocation of resources, all of which Isaac Steven Penascino considers himself to be most fortunate for, in having the support of family and friends, during the unforeseeable hardships,  i.e. homelessness, barriers to employment and housing, etc., that resulted from Cope's fabricated accusations of a violent crime, and the toll of the legal process, on his livelihood, knowing someone accused of the same, with less resources (Information/knowledge, financial, etc.), may not have achieved the same outcom.

## NATURE OF ACTION

1.      This is an action arising under the United States Constitution and 42 U.S.C. § 1983 ("1983"), The Constitution of the Commonwealth of Pennsylvania, Commonwealth of Pennsylvania Common law, and Tortious Law.

2.      Trent Cope intentionally and maliciously filed a false police report, and subsequent Temporary Protection from Abuse order, whereby he intentionally gave false statements through a means of fabrication, embellishment, dishonesty, or otherwise without basis in law or fact, or without probable cause and made primarily for a purpose other than that of reporting a violation, leading to the unlawful arrest of Isaac Steven Penascino. Trent Cope's course of action, was premeditated, with mal-intent, and is of a manner, in violation of local, state, and federal laws and police regulations.

3.      Faith Musselwhite, of the City of Pittsburgh Bureau of Police, was grossly negligent and lacked the necessary due-diligence, when responding to, investigating, and resolving the above-referenced incident. Officer Faith Musselwhite failed to identify the inconsistencies and contradictions in Trent Cope's falsified and fabricated statement, and therefore, despite, having the ability and authority to intervene, de-escalate, and conclude the matter, in an ethically and legally sound manner, failed to do so. The negligence demonstrated by Officer Faith Musselwhite, led to the unlawful arrest of Isaac Steven Penascino, with neither probable cause nor reasonable suspicion. Musselwhite's conduct, as referenced in this complaint, is of a manner, in violation of local, state, and federal laws and police regulations.

4.      Benjamin Gery, of the City of Pittsburgh Bureau of Police, was grossly negligent and lacked the necessary due- diligence, when responding to, investigating, and resolving the above-referenced incident. Officer Gery, despite having instincts that the situation was likely a deceptive ploy enacted by Cope, had the ability and authority to intervene, deescalate, and conclude the matter, in an ethically and legally sound manner, but failed to do so. The negligence demonstrated by Officer Gery, led to the unlawful arrest of Isaac Steven Penascino, with neither probable cause nor reasonable suspicion. Gery's

conduct, as referenced in this complaint, is of a manner, in violation of local, state, and federal laws and police regulations.

5.    City of Pittsburgh is and was, at all times relevant to this proceeding, the employer of Officers Musselwhite and Gery and thereby, is responsible for establishing and enacting a set of enforcement standards and procedures involving the hiring, training and supervision of its police officers, including training of standard operational procedures and best practices associated with the Officers' official duties. City of Pittsburgh Bureau of Police, through their Internal Affairs Division, and via the Citizen Police Review Board, is consequently accountable for investigating reports of misconduct perpetrated by Officers of the Bureau and enforcing disciplinary action, if and when necessary and therefore liable for the conduct of the Officers.

6.    The Commonwealth of Pennsylvania, an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, was responsible for prosecution of the charge, Simple Assault - Misdemeanor II, against Isaac Penascino in Docket No. CR CP-02-CR-3837-2024 . The Commonwealth of Pennsylvania, represented by the District Attorney of Allegheny County, violated the *Plaintiff's civil* rights and liberties, in an attempted effort to deny due process of law. The Commonwealth, given the United States Legal System considers a person innocent until proven guilty in a court of law, with the right to trial by jury, deprived Isaac Steven Penascino of civil liberties and freedoms, guaranteed and protected by state and federal legislation.

## PARTIES

7.    Plaintiff Isaac Penascino ("Penascino") is a person domiciled in the Commonwealth of Pennsylvania within the Western District of the Commonwealth of Pennsylvania. Penascino is a gay, bi-racial, African-American (Black) and Caucasian (White), male, and a native resident of Pittsburgh, Pennsylvania.

8.    Defendant Trent Cope ("Cope") is a person domiciled in the Commonwealth of Pennsylvania within the Western District of the Commonwealth of Pennsylvania. Cope is a Caucasian (White) male,

who attended Lincoln Park Performing Arts School and is native to Beaver County, Pennsylvania. Cope
is sued in his Individual capacity.

9.        Defendant Faith Musselwhite ("Musselwhite") is a person domiciled in the Commonwealth of
Pennsylvania within the Western District of the Commonwealth of Pennsylvania. Musselwhite is a
Caucasian (White), female. At all times pertinent and relevant to this action, Musselwhite was employed
as a police officer by the City of Pittsburgh, Pennsylvania, and at all times mentioned herein acted in the
course and scope of her employment, under color of Pennsylvania law. Musselwhite is sued in her
Individual and Official capacity.

10.       Defendant Benjamin Gery ("Gery") is a person domiciled in the Commonwealth of Pennsylvania
within the Western District of the Commonwealth of Pennsylvania. Gery is a Caucasian (White) male.
At all times pertinent and relevant to this action, Gery was employed as a police officer by the City of
Pittsburgh, Pennsylvania, and at all times mentioned herein acted in the course and scope of his
employment, under color of Pennsylvania law. Gery is sued in his Individual and Official capacity.

11.       Defendant, The City of Pittsburgh ("City"), refers to the municipal government organization, The
City of Pittsburgh, itself, with jurisdiction over the City of Pittsburgh city limits and existing under the
laws of the Commonwealth of Pennsylvania, and the Federal Government, with the ability to sue and be
sued within the State of The Commonwealth of Pennsylvania. Defendant City of Pittsburgh, at all times
pertinent and relevant to this action, shall be subject to penalty of violation under State and Federal law
and is responsible for the all functions related to employment of City of Pittsburgh Bureau of Police
Officers, including, hiring, training, supervision, discipline, management and other related purposes, of
or related to policing activities and the Officers of the Bureau, including Defendants Musselwhite and
the Gery. As such, Defendant City of Pittsburgh, itself, is sued in its Official capacity.

12.       Defendant, The Commonwealth of Pennsylvania ("Commonwealth"), refers to the government
entity of the Commonwealth of Pennsylvania, itself, under the Federal authority of the Government of
the United States of America, with the ability to sue and be sued within the Commonwealth of

Pennsylvania and the United States of America. Defendant the Commonwealth of Pennsylvania, at all times pertinent and relevant to this action, shall be subject to penalty of violation under State and Federal law. Defendant Commonwealth of Pennsylvania, has a constitutional obligation to constituents of the Commonwealth to ensure due process, in any court of law, within its jurisdiction. As such, Defendant The Commonwealth of Pennsylvania, is required to acknowledge and uphold the civil rights, freedoms, and liberties established by the legislation governing The Commonwealth. As such, The Commonwealth of Pennsylvania, itself, is sued in its Official capacity.

13.     Defendants are liable jointly, severally, and in solido for the intentional, unethical, and otherwise unconstitutional, unlawful and tortious conduct set forth below.

## NON-PARTIES (THIRD PARTIES)

14. District Attorney of Allegheny County     Prosecution for criminal charges related to CR-0002656-2024

15. Randy Lucero                          Friend of Plaintiff - Present at time of arrest 05/19/2024

16. Brian Bonish                Plaintiff's significant other ("Boyfriend") - Present in days before arrest

17. Randy Lucero                          Friend of Plaintiff - Present at time of arrest 05/19/2024

18. Denay Clemons                       Plaintiff's previous roommate - Provided keys to house

19. Honorable Kathleen R Mulligan              GRANTED Temporary PFA - May 20, 2024

20. Honorable Lisa G Middleman                 Did NOT Grant Final PFA - June 18, 2024

21. Honorable Hugh Fitzpatrick McGough           Did NOT Grant Motion - July 29, 2024

22. Honorable Susan Evashavik DiLucente     Presided Formal Arraignment to Non-Jury Trial

23. Honorable Katherine B. Emery           Presided over Non-Jury Trial as of 02/20/2025

24. Tom McKinley           Penascino's Retained Criminal Defense Attorney - Ketchel Law Firm

25. Noelle Fisher         Penascino's Maternal Aunt, who assisted with move in & out from Residence

## JURISDICTION AND VENUE

26.     This Court has jurisdiction to hear this Complaint, in this Court, pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), and 28 U.S.C. § 1367

(supplemental jurisdiction). The controversy arises under the U.S. Constitution and 42 U.S.C. § 1983. This Court has authority to award attorney's fees pursuant to 42 U.S.C. § 1988.

27.    Venue is proper, in this Court, pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this complaint happened in this district

## FACTUAL ALLEGATIONS

28.    In or around June 2015,  Isaac Penascino, graduates from Bethel Park High School, in the Class of 2015, and goes on to pursue his baccalaureate studies, as a Full-Time, On-Campus student, at Washington & Jefferson College, in Washington, Pennsylvania, per Exhibit # HS Diploma, Academic Excellence, Acceptance Letter, Academic.

29.    Penascino, in addition to being a Full-Time Student, holds a Full-Time Serving/Bartending job at the local Olive Garden Restaurant.

30.    Penascino, simultaneously, competes as an NCAA All-Conference Athlete, as a member of the Division III Men's Swimming & Diving Team, per per Exhibit # NCAA All Conference, Varsity Letter

31.    In or around Fall/Winter 2016, Isaac Penascino and Trent Cope connect, through the social media platform, Instagram, where they first begin communicating, before moving communication to text message, and eventually, on (1) singular occasion, meeting in person.

32.    In or around Winter of 2018, before the start of the Spring Semester of his Junior year, Isaac Penascino transfers academic institutions from Washington & Jefferson College, in Washington, Pennsylvania to Florida Atlantic University in Boca Raton, Florida.

33.    On or about December 13, 2019, Penascino graduates from the College of Business of Florida Atlantic University with his Bachelor's degree, in the Class of 2019, per Exhibit # Degree and Certificate.

34.    On or about January 6th, 2020, Isaac Penascino, relocates back to Pittsburgh, making the approximately 18 hour drive, with all of his personal belongings, from Boca Raton Florida, to Pittsburgh, Pennsylvania, where he stays with his Aunt, Noelle Fisher, in Penn Hills, Pennsylvania.

35.     On or about July 4th, 2023, Isaac Penascino and Trent Cope reconnect via the social media platform, Snapchat, and eventually make plans to get together, reconvening for, only, the second time, in person, since meeting in person, back in 2016, at Cope's Residence ("Residence"), a (2) Bedroom (1) Bathroom single-occupancy dwelling, located at 245 Edith Street, where he lives with his roommate and coworker, Denay Clemons, from their shared place of employment, Monterey Bay Fish Grotto, a restaurant located on Mount Washington, in Pittsburgh, Pennsylvania.

36.     Isaac Penascino, per the invitation of Cope, stays, at the above-stated Residence, for a duration of approximately 7 days, before departing.

37.     On or about July 11, 2023, Isaac Penascino travels to Extended Stay America, a Long-Term Hotel, ("Hotel"), located in Monroeville, Pennsylvania, where he had a confirmed reservation until or about November 2023, per Exhibit # Hotel Reservation Invoice.

38.     In or around Fall 2023, while temporarily residing at the Hotel, Isaac Penascino attends the West Penn Hospital - College of Nursing, Patient Care Technician Program ("Program").

39.     Isaac Penascino, upon successful completion of the Program, accepts employment with Allegheny Health Network, at West Penn Hospital, as a Patient Care Technician on the T3/N3 Unit - Inpatient Physical Rehabilitation, per Exhibits # Handbook, AHN ID Badge

40.     Trent Cope, concurrently, attends an intensive inpatient substance abuse/addiction treatment program, "rehab", per Exhibit # Screenshot of Conversation, Cope stating he just returned from rehab, for a possible drug and/or alcohol habit

41.     On or around March 13, 2024 the two individuals, Penascino and Cope, reconnect, again, via Snapchat, before meeting up, in person, to discuss a room, for rent, at the Residence, which Penascino opts to accept.

42.     On or about April 4, 2024 Cope sends a text message to Penascino, asking Penascino to transfer the utility bill for Electricity, in his name. Cope states that the Electricity Utility is currently in the name

of his previous roommate, Denay Clemmons, and is slated to be turned off the following day, April 5, 2025, per Exhibit # Screenshot of Conversation.

43.    Isaac Penascino attempts to transfer the Electricity utility, in his name, and is unable to do so, being that a deposit is required, in association to the address of the Residence, per Duquesne Light Company, at the time, and otherwise unbeknownst, to Penascino, because of Cope's undisclosed, past-due balance, per Exhibit # Screenshot of Notice of Required Deposit

44.    On or about April 5, 2024, Isaac Steven Penascino, with the assistance of his aunt, Noelle Fisher, moves into the Residence of Trent Cope, located at *245 Edith Street Pittsburgh, Pennsylvania 15211.*

45.    Per a mutual agreement, between Penascino and Cope, Penascino pays $1,050, upon move-in, $525 as deposit, and $525 for first month's rent, as well as $525/month, each month thereafter, in addition to, an equal share, half (50%), of the month's utilities including electric, gas.

46.    Penascino, pre move-in, declines to pay for Wifi, being that he had his own network connectivity. Penascino paid his portion of Rent, half of the total, $525, for the months of April & May, in full.

47.    On or about May 10, 2024 Cope tells Penascino, via text message, that he plans to pay utilities "next Saturday" referring to Saturday, May 18, 2024. Cope states the utilities due are Electric: $40, Gas: $100, and wifi, $30.

48.    Penascino agrees to paying, as initially indicated, his portion of half, of the variable monthly utilities, which he thought to be $70 ( Electric $40 + Gas $100 = $140 *50%).

49.    Penascino tells Cope he will have $70 for his share of the Electric & Gas, reminding Cope that he has not used the wifi, and therefore, per their original agreement, would not contribute to the cost for it, per Exhibit # Screenshot of Conversation.

50.    Cope affirms the totals he sent, Electric: $40, Gas: $100, and wifi, $30, were the evenly split amounts, causing Penascino to doubt the validity of the amounts Cope is requesting, later finding out both of the utilities were past due, per Exhibit # Screenshot of Conversation.

51.    Penascino, in response to the questionable amounts requested, above, asks Cope for a copy of the utility bills from the utility companies, Duquesne Light Co. for Electricity & People's for Gas, to confirm the requested amounts.

52.    Cope refuses to provide them. Penascino refrains from paying for the utilities, and tells Cope he will only pay his portion of the utilities, only upon seeing the official monthly statement from the utility companies. per Exhibit # Screenshot of Conversation.

53.    On or about, May 16, 2024, Cope posts to Facebook, an advertisement seeking a new roommate, stating "hey hey ! i'm looking for a cute roommate on mount washington super close to a bus line! If anyone has any leads LMK Shared Space $525 plus utilities i have 2 super cute kitties too!", unbeknownst and, otherwise, undisclosed, to Penascino, at the time, per Exhibit # Screenshot of Facebook Post.

54.    On or about May 17, 2024, Cope texts Penascino, requesting the above referenced amount, via text message, stating "this is due tomorrow please". Penascino responding, "I need to see a monthly statement showing the charges", per Exhibit # Screenshot of Conversation.

55.    Cope doubles down and claims, "and I'll let you know how much water is too for the two months you've been here.", of which Cope falsely claimed right to, being that, the tenant's water is a fixed utility, included in the total cost of rent, and is metered in the name of the landlord, rather than that of the tenant, per the Lease Agreement between Cope, and the landlord of the property, RE360, per Exhibit # Copy of Lease Agreement.

56.    On or about May 18, 2024, at approximately 2:20 am, Trent Cope follows Isaac Steven Penascino, to the restroom, after he attempted to end the conversation, forcing Penascino to lock himself in the bathroom. Cope then calls Penascino a "monkey boy" before stating he, Cope, is going to throw the belongings of Penascino, outside.

57.      Trent Cope enters the bedroom of Isaac Steven Penascino and begins throwing personal property, including the mattress, clothing, a laundry basket, etc., belonging to, or otherwise owned by, Penascino, down the 2nd story staircase, and outside, during inclement weather, per Exhibit # Video of Incident.

58.      On or about May 18, 2024, at approximately 2:24 am, Isaac Steven Penascino calls 911 and states that his roommate, Trent Cope, is throwing his personal items, including the mattress, clothing, a laundry basket, etc., down the 2nd story staircase, and outside, during inclement weather, per Exhibit # Screenshot of Call Log,.

59.      Cope states that his actions are justified because "no utilities have been paid", by Penascino, for the month, per Exhibit # Video of Incident.

60.      The City of Pittsburgh Bureau of Police ("PBP") are dispatched to the Residence. PBP Officers, identified as Officers other than Defendant Musselwhite or Gery, come to the Residence, in response to Penascino's call.

61.      PBP Officers, those not including Defendants Musselwhite and Gery, affirm with both Penascino and Cope, that this type of incident would be considered a Civil matter, under Landlord/Tenant Law, per the requirements of Eviction proceedings, set forth by the County of Allegheny, and that any further action would need to be handled with the local magistrate's office during normal business hours.

62.      PBP Officers, those not including Defendants Musselwhite and Gery, assist Penascino with getting his mattress back upstairs, before departing the premises.

63.      On or about May 18, 2024, at approximately 11:50am, Penascino awakens to Cope on the phone with 911 dispatch, falsely reporting that he is in imminent danger, again, complaining of an issue with his roommate, per Exhibit # Video of Incident.

64.      The 911 Dispatcher ("Dispatcher") tells Cope that the Police had, *once*, previously, responded to the Residence, for a call of a similar nature, and reaffirmed, with Cope, that PBP stated this "to be a Civil matter", requiring it to be brought before the local Magistrate, for any action to be taken, per Exhibit # Video of Incident.

65.      The Dispatcher, then proceeds, to explain, to Cope, the process he would need to follow, as far as legal procedures to begin an eviction proceeding, explaining, in detail, the general timeline of the eviction process, as well as providing him the address of where he would need to go, in order to begin that process, per Exhibit # Video of Incident.

66.      Penascino maintains a safe and non-threatening distance, having made it previously known, that he was using his cellphone to record, in full, the conversation between the dispatcher and Cope, per Exhibit # Video of Incident.

67.      Cope, while still on the phone with the Dispatcher, approaches Penascino, shaking his rear-end and blowing kisses at the camera, per Exhibit # Video of Incident

68.      On or about May 19, 2024, Isaac Steven Penascino returns home from a jog, and enters the Residence, via the backdoor, through the Laundry Room, where he has wet clothes in the Washer, needing to be moved to the Dryer.

69.      Cope, who had been sitting in the living room, walks through the kitchen, into the Laundry Room, confronting Penascino, who had been moving his laundry, taking Cope's clean, dry clothes out the Dryer, and piling them.

70.      Cope, unplugs the Dryer from the wall outlet, located at the Right-hand side of the dryer, with the intention of preventing Isaac Steven Penascino from using it, claiming that Penascino cannot do so because, he has not paid any contribution towards the utility bills, for the month, per Exhibit # Photo of Outlet Locations in Laundry Room.

71.      Penascino takes the cord of the Dryer, which Cope had placed on top of the Dryer, after unplugging it, and plugs the cord into the outlet located on the lower portion of wall to Left-hand side of the dryer, per Exhibit # Photo of Outlet Locations in the Laundry Room.

72.      Penascino sits down in front of the plugged in outlet, being that he needs to dry his bedsheets and blankets, and would have, otherwise, paid his portion of utilities, had Cope produced the proper utility bill statements.

73.    Cope reaches down, under Penascino, in an attempt to unplug the dryer and catches his hand on the bottom of the metal outlet faceplate, causing a small laceration to his hand per Exhibit # Photo of Outlet Location in Laundry Room and Photo of Injury, originally submitted by Cope.

74.    Cope throws himself on the floor, rolling around on the floor, in hysteria, giving a one-man performative demonstration, even falsely and arbitrarily calling out for help, unwarrantedly and unnecessarily, especially given that Penascino, has remained seated, in place, on the floor, in front of the outlet, even after Cope descended himself to the floor.

75.    Penascino then proceeds to get up and go upstairs, Cope still rolling around on the floor, to take a shower, having been sweaty from the exercise, jogging, he had just finished, prior to returning home, as he waited for his food, from UberEats, which he had ordered, from Kawa, located in the North Hills area of Pittsburgh, upon returning home.

76.    Cope wrongfully and unnecessarily, calls 911, requesting Emergency Response for a Domestic Abuse incident, without basis in law or fact, or without probable cause.

77. Isaac Steven Penascino finishes his shower and gets dressed before going outside of the Residence, seeing a vehicle pulling up to the Residence, thinking it to be his UberEats delivery, at which time, Cope locks Penascino out of the Residence.

78.    The vehicle that pulled up to the residence was later identified as Cope's friend, Randy Luecero, who arrives, at the Residence, leaving his newborn child, and the mother of his child, in the parked car, a black Kia Spectra, license plate # PA KLC-0989, as he makes his way, inside the Residence.

79.    Lucero, upon gaining entry to the Residence, physically assaults Penascino, grabbing his wrist, through the screen on the door, in what he, himself, described as "Keeping him out", per Exhibit # Body Camera Footage of Officers Musselwhite and Gery, Photo of Penascino's wrist, Photo of Lucero in doorway, Photo of Lucero's license plate.

80.    On or about May 19 2024, at approximately 8:26 pm, The City of Pittsburgh Bureau of Police Officers Faith M. Musselwhite and Benjamin Gery, arrive on scene, at the Residence, located at 245

Edith Street, in response to Trent Cope's untruthful reporting to 911 Dispatch, as per Exhibit # Body Camera Footage of Officers Musselwhite and Gery.

81.    Cope, deliberately and maliciously, gives a falsified report, to Officers Faith Musselwhite and Benjamin Gery, through a means of fabrication, embellishment, dishonesty, or otherwise, without basis in law or fact, or without probable cause, in which he wrongfully claims to have been assaulted by Penascino

82.    Officer Benjamin Gery, upon speaking with Cope, separates himself, to makes a call to Sergeant Gregory Livesey, in which he is verbally discriminatory, against the Plaintiff, Isaac Steven Penascino, and for all intents and purposes, Defendant, Cope, collectively,  as it relates to, sexual orientation, and/or gender identity in stating, "This one's a little gray. Yeah, you know what I'd call it... *covers bodycam microphone*..." Before referencing "Ah, so we have two males..."

83.    He then continues on, "... that were former partners, over a year. Well, this is where the grey is. The guy with a little cut on his hand, is saying that the other guy slammed the dryer door on his hand, and then like tussled him around the room...." at which time, Penascino's UberEats order arrives, causing Gery to ask, "Are you just picking up food bud?"

84.    Gery, talking to Livesey, continues, in saying" Um, but pushed him around the room, and all that shit. He has no other injuries. He has a small cut on his hand that he says is from the door. Um, the alleged actor said that he plugged the dryer in, the other male unplugged it and when he unplugged it he cut his hand on some piece of metal back there, trying to plug it in, or unplug it... Yeah, yes, Alright, it's just not really feels right cause he is trying to get him evicted and all this shit and I feel like he's using it, making stuff up, but I can't prove it. Okay. Copy that. Okay. Appreciate it. Yeah, we've got them both here. They've both been cooperative. Uh, no. I mean it is a very very minor and that's the thing, its believable that when he was trying to unplug something, he cut his hand. So that's why I'm like hmm I don't know about this."

85.    Livesey, having been ambiguously and partially informed of the situation by Gery, given Gery's confusing interchanging of the general pronoun, "He" and unspecificity of "The Guy", related or applicable to both Penascino, and Cope, advises Gery to go by the claims of the "Accuser", rather than that of the "Accused", leading to the wrongful arrest of Isaac Steven Penascini despite, neither Gery nor Musselwhite, ever, so much as attempting to verify or substantiate any of Cope's claims.

86.    Cope's falsified statement, in part, claims, including inconsistencies, contradictions, and discrepancies, are below:

Q: Musselwhite: "Do you need to see medics ?"

87.    **A: Cope: "Um, so I would only like to see them just for, um, I'm in the process of evicting like, I...You've already been here multiple times this weekend.**

88.    Q: Gery: Were you two ever in a relationship?

89.    **A: Cope: "...and I'm in the process of evicting him, so I would just like proof of everything when I go to talk to my landlord and the magistrate tomorrow.", Cope further, inconsistently, declining medical attention, upon the arrival of "Medic 8" Paramedics/EMTs to the scene, at Cope's request, as per Exhibit #  Body Camera Footage of each Officers Musselwhite and Gery and the Paramedic/EMS Medical Report.**

90.    Q: Gery: Were you two ever in a relationship?

91.    **A: Cope: "Yes, sir, we dated when we were 18 years old. We were, he used to live here last year, and we were intimate with each other. We're just not intimate now. We have a very long history, yes, I've known him since I was 18.**

92.    Q: Gery: Do you want to see medics or ?"

93.    **A: Cope: "Um, so I would only like to see them just for, um, I'm in the process of evicting, like, I.. You've been here a couple times this weekend...You guys have been, as a whole. so I'm in the process of evicting him so I would just like proof of everything when I go to talk to my landlord and the magistrate, tomorrow**

94.    Q: Gery: So I might've missed you guys talking early, how did this all come about?

95.    **A: Cope: "Um, so fast forward from this weekend, it's been a lot of disputes. this that, and the third. He comes home, I sent him a very nice text message, basically telling him that all the bills are paid this month. He has not paid any any of the bills this month. Please do not use any utilities. except the utilities I use. If you have any questions, let me know. He comes home, starts turning on all of my hot water, all of my lights, anything, to run a bill up, because when I, he got home, he said he didn't receive my text message. So, I told him. We then went into the Laundry Room, and that's when he thought he was going to start using the dryer, so I unplugged the dryer, open it, and thats when he slammed me, slammed my hand, and then rocked me around the Laundry Room, a little bit.**

96.    Q: Gery: When you say, slammed you and slammed your hand?

97.    **A: Cope: "No. We had already played that game. I wasn't playing the outlet game with him as well. No sir, I unplugged it and then stopped him from using, cause you can't use a dryer unless it's closed. And that's when boom, boom, boom."**

98.    Q: Musselwhite:  And then, do you know his info ?

99.    **A: Cope: "I can only tell you this last name, if I was able to go downstairs and get my phone."**

100.   Q: Gery: So, did he push the whole dryer or the door?

101.   **A: Cope: "The door itself."**

102.   Q: Gery: Okay and that's where you got cut?

103.   **A: Cope: "That's where I got my lacerations. Yes Sir. Like I said, he like slammed me around a little bit. I don't know what I caught on camera. I tried to have my phone on that whole confrontation but, like,I'm not sure what I caught.**

104.   Q: Gery: Alright cause nothing looks disturbed or anything, that's why I'm asking

105.   **A: Cope: "So, he because, because before you guys came, He picked everything up."**

106.    Q: Gery: And what's his name again?

107.    **A: Cope: "His name's Isaac. Let me find it. So he picked everything up before you guys came. that's all my clean clothes, that he took out of the dryer so that he could wash his clothes."**

108.    Q: Gery: And that's the door he slammed?

109.    **A: Cope: "Correct, and then the two walls that you see between the dryer is what he was."**

110.    Q: Gery: Bouncing you around?

111.    **A: Cope: "So yeah, it's not distraught, because he picked everything up before you guys came."**

112.    Q: Gery: And you have no other injuries besides that?

113.    **A: Cope: "No sir."**

114.    **A: Cope (from inside the house): "I found more lacerations, by the way."**

115.    Q: Gery: Where at?

116.    **A: Cope: "Um, on my arm and on my leg.  The opposite side of where I'm getting him."**

117.    **Isaac Penascino is placed under arrest, following the statement, above.**

118.    Q: Gery: Where does he reside besides, here? Anywhere else you know of?

119.    **A: Cope: "Homeless."**

120.    **A: Cope: "And then if you guys are driving him, can you just let him know nothing like is going to happen to his cat? I know that's a weird anxiety of him."**

121.    Q: Gery: Okay, I'll let him know. He's going to jail. You know, you know that right?

122.    **A: Cope: "Yes."**

123.    Officers Gery and Musselwhite, confirm that there is no physical sign of any altercation, noting the absence of anything indicating the series events, as per the allegations of Cope, Gery stating, "I don't see anything disturbed." Then proceeding to ask Cope, "Alright, all this took place in that little room right? Cope affirms, before Gery responds " Alright cause nothing looks disturbed or anything, that's why I'm asking."

124.    Cope's deceptive tactics yield success, as he intended, in regards to using the legal authority of Officers Faith Musselwhite and Benjamin Gery to remove Isaac Penascino from the property, taking him into custody, acting under color of law via a means of Unlawful Arrest.

125.    Isaac Steven Penascino is arrested, charged with him with (1) Count - Simple Assault, Misdemeanor II, carrying a maximum sentence of up to (2) years of imprisonment.

126.

127.    Cope's sole purpose for making a falsified police report, is of a manner that sought, none other than to intentionally inflict harm, emotional distress, or undue hardship, injury or damage upon the persons or property of Isaac Steven Penascino.

128.    The treatment Penascino received, from Officer Musselwhite and Gery, following his arrest, was neglectful, whereby he was never read his Miranda Rights, as required by law, from the time time arrest to the time of his, Penascino's, drop-off and false imprisonment at the Allegheny County Jail, where he was held against his will for nearly 15 hours

129.    Further, Penascino was left, handcuffed, in the PBP vehicle, unattended, with the vehicle left off, and the windows rolled up, when Gery goes into the Residence to see about Musselwhite's progress, with getting a statement from Cope and Randy Lucero, Cope's friend.

130.    On or about May 19, 2024, at approximately 8:30 pm, Isaac Steven Penascino is transported, by Musselwhite and Gery, from the Residence, to the Allegheny County Jail, where he remained falsely imprisoned, against his will for approximately 15 hour, causing constitutionally-actionable injury and damages.

131.    On or about May 20, 2024, shortly after midnight, Cope, serves Penascino with an untruthful Temporary Protection From Abuse Order ("PFA"), whilst he is falsely confined, in a holding cell, with approximately 14 others, thereby seeking to expedite the Eviction process, through an illegitimate and illicit means. s

132.     On or About May 19, Defendant Musselwhite and Gery, and by proxy, the City of Pittsburgh, had no justifiable probable cause or reasonable suspicion, to arrest Penascnio, from the Residence located at 245 Edith Street.

133.     Isaac Steven Penascino, at no point, posed any threat to anyone on or at the scene: he was unarmed and fully cooperative. He made no attempt to evade or resist arrest, in which he had no reason to flee or fail to cooperate, he himself having made the initial call to 911, the previous day, in order to seek the assistance of Police, despite not getting it.

134.     Penascino thought the Police would assist, accordingly, in a matter similar to that of the officers that responded on May 18, 2024, in which they would have recognized the matter as a Civil dispute, under jurisdiction of the Magisterial Judge.

135.     On or about May 20, 2024 Trent Cope files a falsified petition for an Emergency Protection From Abuse Order, leading to the immediate eviction of Isaac Steven Penascino, from the Residence, located at 245 Edith Street that resulted in constitutionally-actionable injury and damages.

136.     The actions of the Defendant Cope result in constitutionally-actionable injury and damages, negatively impacting Penascino's livelihood.

137.     Officers Faith M. Musselwhite and Benjamin Gery, were grossly negligent and lacked the necessary due- diligence, when responding to, investigating, and resolving the above referenced incident having the ability and authority, and obligation to intervene, deescalate, and resolve the matter, in an ethically and legally sound manner, but failed to do so.

138.     Officers Faith M. Musselwhite and Benjamin Gery act without basis in law or fact, or without probable cause, and, vicariously, for a purpose, of a manner that sought to intentionally inflict harm, emotional distress, or undue hardship, injury or damage upon the persons or property of Isaac Steven Penascino, under color of The Commonwealth of Pennsylvania law.

139.     The actions of the Defendants Musselwhite and Gery results in constitutionally-actionable injury and damages, negatively impacting Penascino's livelihood.

140.     The City of Pittsburgh is vicariously liable for all conduct of, or attributable to, Defendant Musselwhite & Gery.

141.     Isaac Steven Penasicno attends the Preliminary Arraignment in relation to Docket # MJ-05003-CR-0002656-2024, before Honorable Nicholas C. Martini.

142.     Isaac Steven Penascino, spends hours trying to find out how to get necessities, including medication, from his personal belongings, being that, upon his release from the Allegheny County Jail, he had no wallet or phone, or essentially nothing to otherwise help himself, in such a such a situation, being that it was all at the Residence, from which Cope, under the temporary PFA he filed, prevented Penascino from returning.

143.     Isaac Steven Penascino, spends the day and night outside, including overnight, as a result of having no resources available, in the moment, following his wrongful arrest, and subsequent eviction due to the untruthful PFA he filed.

144.     On or about May 21, 2024 at approximately 6:00 pm, Isaac Steven Penascino, is escorted, by Pennsylvania Constables Robert Simms and Gage Stehley, to recover Isaac Steven Penascino's personal property, left behind, upon his wrongful, illicit Eviction, from the Residence, given the falsified Temporary Protection from Abuse Order, filed by Cope, at a cost of $100.

145.     Isaac Steven Penascino returns to the Residence, to find belongings damaged and missing in his absence, Cope admitting to having gone through the belongings of Isaac Steven Penascino, while he was falsely imprisoned at the Allegheny County Jail.

146.     Penascino is limited to the carrying capacity of his person, being that his primary means of travel, at the time, is Public Transit, thereby having to discard several of his belongings, in which he could not transport or otherwise store.

147.     Trent Cope, using a falsified Emergency Protection From Abuse Order, intended to undercut the legal process, including the required due process in relation to Eviction proceedings, thereby, wrongfully, unethically, and illicitly, depriving Isaac Steven Penascino of civil rights and liberties.

148.    Isaac Steven Penascino has additional rights, including those stated in the legislation governing Landlord/Tenant law, in Allegheny County, the Court, with jurisdiction over Landlord/Tenant Claims, per the Pennsylvania Human Relations Act, Article 31.

149.    Per the Pennsylvania Human Relations Act, Article 31, Isaac Steven Penascino should not, and otherwise would not have been subjected to having to discard thousands of dollars, worth of personal belongings, had Cope acted, in alignment with ethical compliance of an Eviction Proceeding.

150.    On or about May 21, 2024, as a result of the Defedants' conduct, Penascino seeks temporary shelter, for 91 nights, at Red Roof Inn, located in Monroeville, resulting in tens of thousands of dollars, of undue and unnecessary out of pocket costs

151.    On or about June 4  2024, Isaac Steven Penascino attends the scheduled Preliminary Hearing, at City Court Magistrate, 05-0-3.

152.    Trent Cope and PBP Officer Faith Musselwhite give false testimony, on record, and under oath, in Magisterial Court, regarding the events alleged to have occurred at the Residence on May 19, 2024.

153.    Musselwhite, commits the act of Perjury, when she knowing gave false statements, stating her time employed with the PBP has been 3 months, later, finding out, Musselwhite had graduated the Police Academy, just a little more, than 6 weeks prior to the incident on May 19, 2024.

154.    In her testimony, Officer Faith M. Musselwhite respectfully addressed and referred to Trent Cope as "Mr. Cope". Simultaneously, Officer Musselwhite demonstrates bias by referring to Isaac Penascino plainly as "Isaac". The verbal disjunction was addressed and was requested to be reflected on the record.

155.    On or about June 4  2024, Penascino receives a Notice of PFA Hearing scheduled for June 18 at 9am.

156.    On or about June 18, 2024, Penascino attends the PFA Hearing scheduled for 9am. Honorable Judge Lisa G. Middleman ("Middleman") did not grant the final order to uphold the PFA, at which point Cope, represented by the Women's Center & Shelter of Pittsburgh, Staff Attorney, Cailtin Cesa, began

crying, thereby gaining the sympathy of Judge Middleman to temporarily uphold the order for a period of 6 months, setting the temporary order to expire December 18, 2024, which, had further negative impact upon his livelihood, resulting in injuries and damages to the persons and property of Isaac Steven Penascino.

157.    Judge Middleman, during the hearing, notably, in observation of the photos of injuries, presented by Cope, first asks Cope how long after the incident the photos were taken, he stated immediately. Judge Middleman then asks Cope what colors he saw in the bruises in the photos, to which, he answered "Yellow, Brown, Green" before she responded "I'm not a doctor or a nurse, but I know that a fresh bruise would appear blue, purple, red, so either these photos weren't taken, as you say, immediately, after the incident, or they simply aren't photos of injuries resulting from this incident, I don't know which of you is really telling the truth."

158.    During the PFA Hearing, in review of the photos, entered into evidence by himself, Cope is unable to identify his Left versus his Right hand, as to which, he claimed to have been injured during the incident.

159.    On or about June 29, 2024 @ 10:00am - Isaac Steven Penascino, is granted a period of 30 mins, per an agreement between himself and Trent Cope, established during the PFA Hearing, under Judge Middleman's ruling, to return a final time, to the Residence to recover any remaining personal items from the property. Isaac Steven Penascino, upon arrival, finds his remaining belongings haphazardly scattered across the front porch and yard area, exposed to the elements, during inclement weather, including his bed frame, mattress, dishes and storage tote of household items, etc.

160.    On or about October 17, 2024 the first Non Jury trial is scheduled for 8:30 am under the ruling of Honorable Judge Susan Evashavik DiLucente but is Continued.

161.    On or about December 12, 2024 the Non Jury trial scheduled for 8:30 am, under the ruling of Honorable Judge Susan Evashavik DiLucente is Continued

162.    On or about December 16, 2024 the Non Jury trial scheduled for 8:30 am, under the ruling of Honorable Judge Susan Evashavik DiLucente is Moved.

163.    On or about, February 20, 2020 the Non Jury trial scheduled for 8:30 am, under the ruling of Honorable Judge Katherine B. Emery is Moved.

## FIRST CAUSE OF ACTION

164.    U.S.C. § 1983 – Unlawful search/seizure, wrongful arrest, in violation of the Fourth Amendment (As to Defendants Cope, Musselwhite, Gery, and The City of Pittsburgh)

165.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

166.    42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress ...

167.    Defendants Cope, Musselwhite, Gery, and The City of Pittsburgh, jointly and severally, deprived Isaac Steven Penascino of clearly established rights secured to him under the United States Constitution— specifically the Fourth Amendment rights to be free from unreasonable seizures particularly describing the persons or things to be seized.

168.    Defendant Cope's intentionally and knowingly falsified report to City of Pittsburgh Bureau of Police Officers Faith Musselwhite and Benjamin Gery, whom were negligent and lacked proper due-diligence when investigating and responding to the situation, on May 19, 2024 at or around 8:30 pm, whilst engaging in conduct in violation of civil rights, and acts that portray misconduct, per the standards and expectations, of the Bureau, leading to the Unlawful Search or Seizure, wrongful arrest, of Isaac Steven Penascino in violation of the Fourth Amendment. Cope's false reporting of a crime, in which he utilized the assistance of City of Pittsburgh Bureau of Police Officers Musselwhite and Gery,

acting in misconduct and civil violation(s), that, through a means of fabrication, embellishment, dishonesty, or otherwise without basis in law or fact, or without probable cause was made primarily for a purpose other than that of reporting a violation, particularly that of a manner that sought to intentionally inflict harm, emotional distress, or undue hardship, injury or damage upon the persons or property of Isaac Steven Penascino, that resulted in constitutionally-actionable injury and damages. Defendant Musselwhite, and Gery are jointly and severally liable along with Defendant City of Pittsburgh, for the injuries and damages to the persons and property of Isaac Steven Penascino .

169.    Any reasonable person, Cope acting otherwise, with malice and ill-intent, being that he had previously been explained and dissatisfied with the timeline of the Eviction process would know that it is unethical and illegal to falsify a police report, especially with the intention of having someone wrongfully arrested, given the circumstances, in which he purposefully, sought to have Isaac Steven Penascino arrested, to forego, the lengthy process of Eviction, a matter of the Civil Division, within the Court's jurisdiction, not that of a Criminal nature.

170.    Any reasonable police officer, in the position of Defendant Musselwhite and Gery, such as those that responded to the Residence, on 5/18/2024, would have known that the incident was a civil matter and any police action, beyond de-escalation, and action to maintain civil discourse, keeping the peace, against Isaac Steven Penascino was unconstitutional.

171.    Any qualified police officer, of which Defendant Gery, initially presented as, later acting in the contrary, and Defendant Musselwhite acting in the contrary altogether, should have been properly trained to recognize signs of false reports, and the proper course of action to respond to an incident, that otherwise was sworn without basis in law or fact, or without probable cause.

172.    The injuries and damages, to the persons and property of Isaac Steven Penascino are a direct result of the Defendants' conduct, that of a manner, individually and collectively, in violation of civil rights and liberties, violation of State and Federal law, and misconduct in violation of the standards of policing regulations, set forth by the Bureau

173.     Defendants' conduct resulted in psychological injury to Isaac Steven Penascino, whom previously, prior to his wrongful arrest, and subsequent incarceration, already suffered from a diagnosis of depression, and anxiety. Since his arrest, Isaac Steven Penascino has experienced emotional and psychological anguish requiring Isaac Steven Penascino to take a higher dosage of Sertraline, an antidepressant he had previously been prescribed, used to treat ailments such as anxiety and depression, that have, as a direct result of the Defendants' conduct, exacerbating those conditions.

174.     Due to the injuries and damages suffered by Isaac Steven Penascino, he is entitled to compensatory, economic, and consequential damages, requested, in the judgement amount requested, $200,000, per named defendant, $1,000,000 in the aggregate, . As a further result of Defendants' unlawful conduct, Isaac Steven Penascino has incurred special damages, including expenses he has and may continue to incur such as other expenses and other special damages, considered in the requested judgment, stated, above, to be ruled on, pending trial.

175.     Isaac Penascino is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by Federal law, considered in the requested judgment, stated, above, to be ruled on, pending trial.

176.     In depriving Isaac Steven Penascino of his rights under the United States Constitution, Defendants Musselwhite and Gery acted under color of law in their respective capacities, particularly that of City of Pittsburgh Bureau of Police Officers, given their conduct, as it is within the scope of their respective, official duties of policing activities. The deprivation of rights, under color of law, is actionable and may be redressed by 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

177.     U.S.C. § 1983 – Deprivation of right to due process of law, in violation of the Fifth Amendment (As to Defendant the Commonwealth of Pennsylvania)

178.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

179.	42 U.S.C. § 1983 provides that: Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress ...

180.	Defendant the Commonwealth of Pennsylvania, jointly and severally, deprived Isaac Steven Penascino of clearly established rights secured to him under the United States Constitution—specifically the Fifth Amendment, the right to due process of law,

181.	At all times relevant to this action, Defendant the Commonwealth of Pennsylvania controlled the situational outcome of the court proceedings, associated to Docket No.: CP-02-CR-0003837-2024

182.	Defendant, the Commonwealth of Pennsylvania, has a constitutional duty, to uphold the rights of all constituents, in which the courts, within the Commonwealth's jurisdiction must conduct legal proceedings accordingly.

183.	Defendant Musselwhitel, Gery, City of Pittsburgh should have known, in situations, such as those that require careful investigation and proper gathering of facts and information, such that of a nature of or relating to Domestic Violence, given the complexity, of such, requiring specific attention to detail, especially when working with constituents of diverse backgrounds and lifestyles, that Officers have a clear constitutional duty to avoid unconstitutional action, in this case, beyond de-escalation, and action to maintain civil discourse, keeping the peace, and that any actions taken beyond that, against Isaac Steven Penascino were or were likely to be, otherwise, unconstitutional.

184.	Defendant City of Pittsburgh should have known that its officers lacked the legal knowledge necessary to properly investigate and respond to the incident, being that it was that of a Civil nature, rather than that of a Criminal nature, to avoid infringement upon Isaac Steven Penascino's civil rights, liberties, and freedoms, in the situation, as described in this complaint.

185.     By failing to intervene in a manner that protects and upholds protected civil rights, of Isaac

Penascino, resulting in damages to his person or property, Defendant Officers Gery and Musselwhite

were acting pursuant to, and within the scope of official duties, acting under color of law, and in

violations of policies, practices and procedures, set forth, by the Bureau.

186.     Due to the injuries and damages suffered by Isaac Steven Penascino, he is entitled to

compensatory, economic, and consequential damages, requested, in the judgement amount requested,

$200,000, per named defendant, $1,000,000 in the aggregate, . As a further result of Defendants'

unlawful conduct, Isaac Steven Penascino has incurred special damages, including expenses he has and

may continue to incur such as other expenses and other special damages, considered in the requested

judgment, stated, above, to be ruled on, pending trial.

187.     Isaac Penascino is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988,

pre-judgment interest and costs as allowable by Federal law, considered in the requested judgment,

stated, above, to be ruled on, pending trial.

188.     In depriving Isaac Steven Penascino of his rights under the United States Constitution,

Defendants  Musselwhite and Gery acted under color of law in their respective capacities, particularly

that of City of Pittsburgh Bureau of Police Officers, given their conduct, as it is within the scope of their

respective, official duties of policing activites. The deprivation of rights, under color of law, is

actionable and may be redressed by 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION

189.     42 U.S.C. § 1983 – U.S.C. § 1983 – Deprivation of right to trial by jury, in violation of the Sixth

Amendment (As to Defendant the Commonwealth of Pennsylvania)

190.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set

forth herein.

191.    Defendant the Commonwealth of Pennsylvania, acted in a manner that deprived Isaac Steven Penascino of his Sixth Amendment right to a trial by jury. This misconduct was a proximate and producing cause of Penascino's injuries and damages.

192.    Due to the injuries and damages suffered by Isaac Steven Penascino, he is entitled to compensatory, economic, and consequential damages, requested, in the judgement amount requested, $200,000, per named defendant, $1,000,000 in the aggregate, . As a further result of Defendants' unlawful conduct, Isaac Steven Penascino has incurred special damages, including expenses he has and may continue to incur such as other expenses and other special damages, considered in the requested judgment, stated, above, to be ruled on, pending trial.

193.    Isaac Penascino is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by Federal law, considered in the requested judgment, stated, above, to be ruled on, pending trial.

194.    In depriving Isaac Steven Penascino of his rights under the United States Constitution, Defendants Musselwhite and Gery acted under color of law in their respective capacities, particularly that of City of Pittsburgh Bureau of Police Officers, given their conduct, as it is within the scope of their respective, official duties of policing activites. The deprivation of rights, under color of law, is actionable and may be redressed by 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

195.    Tort Law of Pennsylvania: Negligence - Intentional infliction of emotional distress, defamation, loss of wages/earning potential, and false imprisonment (As to Defendants Cope, Musselwhite, Gery, the City of Pittsburgh)

196.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

197.    Plaintiff asserts violations of Commonwealth of Pennsylvania State Law relative to intentional

torts by Defendants Cope, Musselwhite, Gery, and the City of Pittsburgh, and The Commonwealth of

Pennsylvania

198.    Defendants acted intentionally, as described herein, to deprive Plaintiff of his rights under

Commonwealth of Pennsylvania Tort law, which resulted in the in actionable injury and damages, of the

persons and property, of Isaac Steven Penascino. As described in this Complaint.

199.    As a direct and proximate result of the intentional acts of Defendants Cope, Musselwhite, Gery,

and the City of Pittsburgh, and the Commonwealth of Pennsylvania, described herein Isaac Steven

Penascino has experienced emotional and psychological injuries, including mental anguish, humiliation,

emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Since the traumatic series

of intentional events that caused actionable injuries and damages to Isaac Steven Penascino, he has been

taking a higher dosage of Sertraline, an antidepressant used to treat anxiety and depression.

200.    Defendants Cope, Musselwhite, Gery, the City of Pittsburgh, and the Commonwealth of

Pennsylvania acted egregiously negligent, in a manner that would otherwise knowingly oppress and

cause harm, such that caused by or associated with the intentional infliction of emotional distress,

defamation, false imprisonment, and negligence, with absolutely no regard for the consequences of their

actions, claims, and omissions

201.    Due to the injuries and damages suffered by Isaac Steven Penascino, he is entitled to

compensatory, economic, and consequential damages, requested, in the judgement amount requested,

$200,000, per named defendant, $1,000,000 in the aggregate, . As a further result of Defendants'

unlawful conduct, Isaac Steven Penascino has incurred special damages, including expenses he has and

may continue to incur such as other expenses and other special damages, considered in the requested

judgment, stated, above, to be ruled on, pending trial.

## FIFTH CAUSE OF ACTION

202.    Violation of Manual of Procedural Order and Code of Ethics of Police (As to Defendants,

Musselwhite, Gery, and the City of Pittsburgh)

203.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth

herein.

204.    Defendants, Musselwhite and Gery's conduct, in response to the incident described, herein the

complaint, was that of a manner, that is of or in violation of policies and procedures, as established and

adopted by the Pittsburgh Bureau of Police, per the Manual of Procedural Order and Code of Ethics of

Police, including, negating the Code of Ethics, deviating from the Mission, and violations of sections:

*"Unbiased Policing"*, *"Lethaltiy Assesment Program"*, *"Interview and Interrogation"*, *"Civilian*

*Complaint Filing Procedure"*, *"Core Values"*, *"Recruit Training"*, *"Responding to Incidents Involving*

*People with Mental Illness"*, *"Reports"*, *"Police Response to Domestic Violence"*, *"Standards of*

*Conduct"*, *"Body Worn Camera Recording"* and *"Digital Evidence Storage Systems"*.

205.    The City of Pittsburgh, by extension of Defendants, Musselwhite and Gery, is, also, responsible for

Penascino's injuries and damages, resulting from violations of the Manual of Procedural Order and Code

of Ethics of Police.

206.    The conduct, in violation of these policies, as stated above, is a proximate and producing cause of

Penascino's injuries and damages, and thereby, entitle him to compensatory, economic, and

consequential damages, as requested, in the judgement amount requested, $200,000, per named

defendant, $1,000,000 in the aggregate,

## SIXTH CAUSE OF ACTION

207.    Violation of Commonwealth of Pennsylvania State Law (As to Defendants,, Faith Musselwhite,

Benjamin Gery, City of Pittsburgh, and the Commonwealth of Pennsylvania)

208.    Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth

herein.

209.     Plaintiff asserts violations of Commonwealth of Pennsylvania law by Defendant, under the

Constitution of the Commonwealth of Pennsylvania, Article I, Section VIII (Security from searches and

seizures); Article I, Section XXIX (Prohibition against denial or abridgment of equality of rights

because of race or ethnicity); 18 PA Cons Stat § 2705 (Recklessly endangering another person); 18 PA

Cons Stat §2709; (Harassment) 18 PA Cons Stat § 2709 A2 and 18 PA Cons Stat § 2709 A3 (Stalking);

18 PA Cons Stat § 3304 (Criminal Mischief and Other Property Destruction); 18 PA Cons Stat § 3921

(Theft by unlawful taking or disposition); 18 PA Cons Stat § 3922 (Theft by deception); 18 PA Cons

Stat § 4114 (Securing execution of documents by deception); 18 PA Cons Stat § 4902 (Perjury); 18 PA

Cons Stat § 4903 (False swearing); 18 PA Cons Stat § 4904 (Unsworn falsification to authorities); 18

PA Cons Stat § 4906 (False reports to law enforcement authorities); 18 PA Cons Stat § 4910, 18 PA

Cons Stat § 4911 (Tampering with or fabricating physical evidence); 18 PA Cons Stat § 4953

(Retaliation against witness, victim or party); 18 PA Cons Stat § 5503 (Disorderly conduct).

210.     Plaintiff asserts violations of Commonwealth of Pennsylvania law by Defendant Musselwhite,

under the Constitution of the Commonwealth of Pennsylvania, Article I, Section VIII (Security from

searches and seizures); Article I, Section XXIX (Prohibition against denial or abridgment of equality of

rights because of race or ethnicity); 18 PA Cons Stat § 2902 A (Unlawful restraint); 18 PA Cons Stat §

2903 A (False imprisonment); 18 PA Cons Stat § 3904 (Arrest without warrant); 18 PA Cons Stat § 4911

(tampering with or fabricating physical evidence); 18 PA Cons Stat § 4114 (Securing execution of

documents by deception); and 18 PA Cons Stat § 4902 (Perjury).

211.     Plaintiff asserts violations of Commonwealth of Pennsylvania law by Defendants Gery , under

the Constitution of the Commonwealth of Pennsylvania, Article I, Section VIII (Security from searches

and seizures); Article I, Section XXIX (Prohibition against denial or abridgment of equality of rights

because of race or ethnicity); 18 PA Cons Stat § 2902 A (Unlawful restraint); 18 PA Cons Stat § 2903 A

(False imprisonment); 18 PA Cons Stat § 3904 (Arrest without warrant); 18 PA Cons Stat § 4911

(tampering with or fabricating physical evidence); 18 PA Cons Stat § 4114 (Securing execution of documents by deception).

212.    Plaintiff asserts violations of Commonwealth of Pennsylvania law by Defendants City of Pittsburgh, under the Constitution of the Commonwealth of Pennsylvania, Article I, Section VIII (Security from searches and seizures); Article I, Section XXIX (Prohibition against denial or abridgment of equality of rights because of race or ethnicity); 18 PA Cons Stat § 2902 A (Unlawful restraint); 18 PA Cons Stat § 2903 A (False imprisonment); 18 PA Cons Stat § 3904 (Arrest without warrant); 18 PA Cons Stat § 4911 (Tampering with or fabricating physical evidence); 18 PA Cons Stat § 4114 (Securing execution of documents by deception); and 18 PA Cons Stat § 4902 (Perjury), as it relates to Defendant Musselwhite, only, and thereby attributable to Defendants City of Pittsburgh.

213.    Plaintiff asserts violations of The Commonwealth of Pennsylvania law by Defendant The Commonwealth of Pennsylvania, under the Constitution of the Commonwealth of Pennsylvania, Article I, Section VI (Trial by jury); Article I, Section IX (Rights of accused in criminal prosecution); Article I, Section XXVI (No discrimination by Commonwealth and its political subdivisions); 18 PA Cons Stat § 4953 (Retaliation against witness, victim or party); 18 PA Cons Stat § 4911 (Tampering with or fabricating physical evidence).

214.    Accordingly, as a matter of Pennsylvania law, Defendants, Cope, Musselwhite, Gery, the City of Pittsburgh, and the Commonwealth of Pennsylvania, are sued, jointly, severally, and in solido for conduct resulting in irreparable injuries and damages, both pecuniary and nonpecuniary, including emotional and psychological injuries, to the persons and property, of Isaac Steven Penascino. Thereby, he is, entitled to compensatory, economic, and consequential damages, as requested, in the judgement amount requested, $200,000, per named defendant, $1,000,000 in the aggregate,

## JURY DEMAND

215.    Plaintiff requests trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.

Respectfully submitted

Dated: May 5, 2025

By: /s/Isaac Steven Penascino

Pro Se Litigant

Penascino@gmail.com

Pittsburgh PA, 15243

37

# DEFENDANT(S) LIST

**TRENT COPE**
245 Edith Street
Pittsburgh, PA 15211
(412) 694-4766
*In his Individual cap*acity

**FAITH MUSSELWHITE**
Officer #306938
c/o City of Pittsburgh
830 E. Warrington Ave.
Pittsburgh, PA 15210
(412) 488-8326
*in her Individual & Official capacities*

**BENJAMIN GERY**
c/o City of Pittsburgh
830 E. Warrington Ave.
Pittsburgh, PA 15210
(412) 488-8326
*in his Individual & Official capacities*

**THE CITY OF PITTSBURGH**
414 Grant St.
Pittsburgh, PA 15219
(412) 255-2621
*In its Official Capacity*

**THE COMMONWEALTH OF PENNSYLVANIA**
Administrative Office of Pennsylvania Courts
601 Commonwealth Ave.   Suite 1500
P.O. Box 61260
Harrisburg, PA 17106
(717) 231-3300
*In its Official Capacity*