IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISAAC STEVEN PENASCINO, *Plaintiff*, v. TRENT COPE, *et al*, *Defendants*. | Civil Action No. 2:25-cv-632 Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

*Pro se* Plaintiff Isaac Penascino ("Penascino") brought this action alleging that two City of Pittsburgh ("the City") employees, Pittsburgh Bureau of Police ("PBP") officers Benjamin Gery ("Officer Gery") and Faith Musselwhite ("Officer Musselwhite"), violated his rights under the United States Constitution and Pennsylvania state law by arresting him after his roommate and former paramour, Trent Cope ("Cope"), reported that he was assaulted by Penascino. (ECF No. 1). Penascino's "First Cause of Action" is brought under 42 U.S.C. § 1983, and it is "Unlawful search/seizure, wrongful arrest, in violation of the Fourth Amendment (As to Defendants Cope, Musselwhite, Gery, and The City of Pittsburgh)." (ECF No. 1, p. 27). His "Second Cause of Action," is brought under § 1983, and it is "Deprivation of right to due process of law, in violation of the Fifth Amendment (As to Defendant the Commonwealth of Pennsylvania)." (*Id*. at 29). His "Third Cause of Action," is brought under § 1983, and it is "Deprivation of right to trial by jury, in violation of the Sixth Amendment (As to Defendant the Commonwealth of Pennsylvania)." (*Id*. at 31). His "Fourth Cause of Action" is "Tort Law of Pennsylvania: Negligence – Intentional infliction of emotional distress, defamation, loss of

1

wages/earning potential, and false imprisonment (As to Defendants Cope, Musselwhite, Gery, the City of Pittsburgh)." (*Id.* at 32). His "Fifth Cause of Action," is "Violation of Manual of Procedural Order and Code of Ethics of Police (As to Defendants, Musselwhite, Gery, and the City of Pittsburgh)." (*Id.* at 34). His "Sixth Cause of Action," is "Violation of Commonwealth of Pennsylvania State Law (As to Defendants, Faith Musselwhite, Benjamin Gery, City of Pittsburgh, and the Commonwealth of Pennsylvania)." (*Id.* at 34). The City filed a motion to dismiss all claims against it (ECF No. 12), and Officers Gery and Musselwhite filed a motion to dismiss Penascino's claims against them (ECF No. 14). For the following reasons, the motions will be granted and all federal claims against these defendants will be dismissed.

### I. STANDARD OF REVIEW

#### A. Rule 12(b)(6)

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider an extraneous document when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If parties present matters outside the pleadings and the court does not exclude them, the motion must be converted to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment if they are integral to the allegations in the complaint and are authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint"); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Here, the Court will consider the criminal complaint (ECF Nos. 13-1; 15-1), the magisterial district court docket sheet (ECF No. 15-2), and the petition for *nolle prosse* submitted by the Allegheny County District Attorney's Office (ECF Nos. 13-2, 15-3), which are matters of public record from Penascino's criminal case in the Allegheny County Court of Common Pleas, Pennsylvania at CC No. 3837-2025 (OTN R879582-4). *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))); *see also Pension Ben.*, 998 F.2d at 1197 (defining public record to include criminal case dispositions, such as convictions or mistrials.).

### B. *Pro se* pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). "*Pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In keeping with its duty to "construe *pro se* complaints liberally ... [the Court] will consider" additional facts included in Penascino's filings that came after the amended complaint,

4

to the extent that they are consistent with the allegations in the amended complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

## II.   FACTUAL BACKGROUND

Penascino and Cope resided at Cope's residence at 245 Edith Street in May 2024 (ECF No. 1, ¶¶ 44, 80). On May 19, 2024, they got into a dispute over the use of the dryer.[1] (*Id.* at 35, 68-75). Penascino claims that Cope sustained a laceration on his hand while attempting to unplug the dryer during the dispute. (*Id.* at 73). Cope called 911 and "request[ed] Emergency Response for a Domestic Abuse incident." (*Id.* at 76). Officers Gery and Musselwhite responded to the call and arrived at approximately 8:26 p.m. (*Id.* at 80). Cope told the officers that Penascino assaulted him. (*Id.* at 81). Officer Gery observed that Cope had a small bleeding laceration on his arm. (*Id.* at 83; ECF No. 13-1). Cope explained to Officer Gery that Penascino "slammed" his hand in the dryer causing "lacerations," and "rocked" him around the laundry room "a little bit." (ECF No. 1, ¶¶ 95, 103). When Officer Gery asked why the laundry room was undisturbed, Cope said that Penascino "picked everything up" before the officers arrived. (*Id.* at 94-111). Cope also told Officer Gery that he and Penascino previously dated and had an intimate relationship. (*Id.* at 90-91).

The officers arrested Penascino. (*Id.* at 117). According to Penascino, the officers were "neglectful" after he was detained by leaving him unattended in a police vehicle for an unspecified period of time and not reading him his *Miranda* rights. (*Id.* at 128, 129). The officers transported Penascino to the Allegheny County Jail, where he was detained for

---

[1] The police had been summoned to the residence in the prior days due to disputes between the two men. (*Id.* at 58-65).

approximately fifteen hours. (*Id.* at 130). While in a holding cell at the jail, Cope served Penascino with a temporary Protection From Abuse Order (PFA). (*Id.* at 131).[2]

Penascino was charged with one count of simple assault, a second-degree misdemeanor, by a criminal complaint in the Commonwealth of Pennsylvania. (*Id.* at 125; ECF No. 13-1). His preliminary hearing was held on June 4, 2024. (ECF No. 1, ¶ 151). Penascino claims that Officer Musselwhite gave "false testimony" by stating she was employed with the PBP for three (3) months instead of six (6) weeks. (*Id.* at 153). At the conclusion of the preliminary hearing, the simple assault charge was held for trial by Magistrate Judge James J. Hanley. (ECF No. 15-2). In the Allegheny County Court of Common Pleas, Penascino accepted an agreement from the Allegheny County District Attorney's Office whereby he completed anger management classes in exchange for the withdrawal of the criminal charges. On March 31, 2025, Penascino's criminal case was *nolle prossed*. (ECF Nos. 13-2, 15-1–15-3).

### III. ANALYSIS

Penascino brings one federal claim under § 1983 against the officers alleging a violation of his Fourth Amendment rights due to an unlawful arrest. He also brings a *Monell* claim against the City. As will be explained below, the Court holds that Penascino has failed to state a federal claim for relief. The Court will dismiss all federal claims, and declines to exercise federal jurisdiction over the state-law claims.

---

[2] According to Penascino, this PFA, which was put in place until December 18, 2024, led to his eviction from Cope's residence. (*Id.* at 135, 143, 156). Pennsylvania constables escorted Penascino into Cope's residence on May 21, 2024, to gather his belongings, which he alleges were damaged or missing. (*Id.* at 144-45). He returned, as scheduled, on June 29, 2024, to gather the remainder of his belongings. (*Id.* at 159). Penascino claims he had to stay for "91 nights at Red Roof Inn, and he expended "tens of thousands of dollars of undue out of pocket expenses." (*Id.* at 150).

A. The § 1983 claims

By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979). In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and that (2) the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); s*ee also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." (citation omitted)). Penascino has failed to state a claim under § 1983 against the officers and the City.

### 1. *Fourth Amendment false arrest claim against Officers Gery and Musselwhite*

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, ... and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. An arrest by a law enforcement officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citation omitted). To sustain a claim for false arrest, a plaintiff must demonstrate "'(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). In other words, lack of probable cause is an essential element of a false arrest claim. "[P]robable cause to arrest exists when the facts and

circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (citing *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). The issue is not actual innocence or guilt, but rather whether the arrest was supported by probable cause. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). The constitutional validity of the arrest does not depend on whether the suspect actually committed any crime. *Johnson v. Campbell*, 332 F.3d 199, 211 (3d Cir. 2003). Additionally, it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with, *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) ("Probable cause need only exist as to any offense that could be charged under the circumstances."), or whether a person is later acquitted of the crime for which they were arrested, *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Although the existence of probable cause in a § 1983 action is typically a question of fact, 'the district court may conclude in the appropriate case ... that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding.'" *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). Here, the record is sufficiently developed as to the facts and circumstances known to the officers at the time they initiated the arrest of Penascino. The Court finds that the officers had probable cause for the arrest of Penascino on May 19, 2024.

The affidavit of probable cause states:

## POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: | OTN/LiveScan Number<br>R 879582-4 | | Complaint/Incident Number<br>ASAP-989958/24069145 |
|---|---|---|---|---|
| Defendant Name | First:<br>ISAAC | | Middle: | Last:<br>PENASCINO |

On 5/19/24 at approximately 2026hrs, Officer Gery and I, Officer Musselwhite, responded to a domestic violence call at 245 Edith St. Pittsburgh, PA 15211. The actor in this call was described as wearing a tan polo shirt and green shorts.

On arrival, we saw a man matching the given description standing on the front porch of 245 Edith St. This man was later identified as Isaac Penascino 07/29/1996. Trent Cope 01/08/1996 was standing in the doorway and asked if we could talk somewhere more private. Cope led me upstairs and told me what happened. Cope stated he had texted Penascino this morning, his former intimate partner and current roommate, letting him know that all the bills had been paid for (by Cope) and to not worry, but to please not use any appliances. Cope stated Penascino then came home later and started turning on all the lights and using all the appliances and was attempting to use the dryer. Cope then stated he unplugged the dryer so Penascino could not use it. Cope stated Penascino plugged the dryer back in and emptied the dryer of Cope's clothes, throwing his items on the floor. Cope stated he did not want to go back and forth so he put his hand in front of the dryer so Penascino could not close the door to the dryer. Following this, Cope stated Penascino slammed the dryer door on Cope's hand. Cope stated this caused a small chunk of skin to come off of his wrist and bleed.

Let it be known, officers witnessed Cope's small laceration bleeding down his arm. At the time we arrived, Cope was holding a paper towel to his wrist to stop bleeding. Cope stated he fell back in pain, and Penascino grabbed his shoulders and "tossed him around" in the laundry room between the wall and dryer. That was when Cope called police.

When asked if Penascino and him were intimate, Cope stated not right now, but they were in the past and most recently, last summer. Cope stated Penascino stayed for around 2 months last summer at this residence. Cope stated it was a similar situation, he paid for everything and Penascino stayed without having paid utilities.

Officer Gery spoke with Penascino to gather his side of the story. Penascino stated he was attempting to use the dryer when Cope unplugged it. So Penascino plugged it back in. Penascino stated when Cope tried to unplug it again, he had cut his hand on the dryer somewhere and that is what caused the small laceration.

Cope requested Medics for his own records. Medic 8 responded and evaluated with no further action necessary.

Officers gathered both parties' information. Penascino was placed in custody, handcuffs double-locked and checked for tightness. Penascino was transported to the ACJ without issue. Cope was screened with the LAP and scored an 7/11. Cope declined to speak with an advocate. BWC was activated.

Page 2 of 3

(ECF No. 13-1, p. 5). Furthermore, Penascino pleads the following additional facts in his complaint. Cope called 911 and "request[ed] Emergency Response for a Domestic Abuse incident." (ECF No. 1, ¶ 76). When the officers responded, Cope told Officers Gery and Musselwhite that Penascino assaulted him. (*Id.* at 81). Cope told Officer Gery that Penascino "slammed [his] hand" in the dryer door and "rocked [him] around the Laundry Room, a little bit," which caused Cope to sustain "lacerations." (*Id.* at 94-103). When Officer Gery asked why the laundry room was undisturbed, Cope said that Penascino "picked everything up" before the officers arrived. (*Id.* at 94-111). Cope also told Officer Gery that he and Penascino previously dated and had an intimate relationship. (*Id.* at 90-91). While Penascino claims that Cope actually sustained the injury while attempting to unplug the dryer, Penascino does dispute that Cope suffered a laceration to his hand. (*Id.* at 73).

Under Pennsylvania law, 18 Pa. C.S. § 2711 permits a warrantless arrest when an officer "has probable cause to believe the defendant has violated . . . section 2701 [simple assault] . . . against a family or household member although the offense did not take place in the presence of the police officer." 18 Pa. C.S. § 2711. A "family or household member" includes "current or former sexual or intimate partners." 23 Pa. C.S. § 6102. A simple assault occurs when one "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa. C.S. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa. C.S. § 2301. The officers charged Penascino with one count of simple assault under 18 Pa. C.S. § 2701(a)(1), graded as a second-degree misdemeanor. (ECF No. 1, ¶ 125; ECF No. 13-1).

The Court holds that the information before the officers was sufficient to "warrant a reasonable person to believe" that a simple assault of Cope had been committed by Penascino.

10

The men, who were once in an intimate relationship, still lived together in the same household. *See Orsatti*, 71 F.3d at 482. To the extent that Officer Gery may have questioned Cope's rendition of what occurred (*see* ECF No. 1 ¶¶ 84, 104-05), that did not negate the existence of probable cause. There is a presumption that information provided by an alleged victim of a crime carries an indicia of reliability. *Greene v. City of Philadelphia*, No. 97-4264, 1998 WL 254062, at *7 (E.D. Pa. May 8, 1998) (citations omitted); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (noting that when police receive reliable identification by a victim of an attacker there is probable cause to arrest), *abrogated on other grounds*. Furthermore, the probable cause inquiry looks to the totality of the circumstances; the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate. Thus, Penascino cannot rely on information unknown to the officers at the time of his arrest (*see* ECF No 26, pp. 3-6 and 9-20) as the probable cause analysis relies only on information known to the officers at the time of the arrest. *See Wright*, 409 F.3d 595 (probable cause is evaluated as of the time of the arrest), *abrogated on other grounds*. Penascino seemingly acknowledges that he cannot rely on information unknown to the officers as he claims that officers inappropriately relied "solely, upon Trent Cope's . . . unproven accounts of Hearsay[.]" (ECF No 26, p. 6).

The evidence of record and the facts pleaded by Penascino show that the arrest was permitted under Pennsylvania law as the probable cause standard was met.[3] Nothing before the

---

[3] To the extent Penascino is alleging that the officers violated the PBP Code of Ethics and approximately twelve policies that cover an array of topics from "Recruit Training" to "Body Worn Camera Recording" (ECF No. 1 ¶ 204), he does not explain how alleged policy violations equate to a violation of his Fourth Amendment rights. And he cannot do so as any violation of an internal PBP policy is not a basis for a separate Fourth Amendment false arrest claim.

Court indicates that the officers lacked probable cause to arrest. Thus, Penascino cannot show that he was falsely imprisoned. Therefore, the officers are entitled to qualified immunity.[4]

### 2. *Monell* claim against the City

The first consideration with a *Monell* claim is whether a plaintiff has "identif[ied] the exact contours of the underlying right said to have been violated" and "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (*en banc*) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). If a constitutional violation has been properly alleged, a municipal entity may be liable for it under § 1983 if the violation was a direct result of the entity's policy, custom or practice.[5] *Monell v.*

---

[4] The doctrine of qualified immunity insulates government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two *Saucier* prongs in any order, at their discretion. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law. *See id.* at 232.

 A police officer is entitled to qualified immunity from a false arrest charge "if a reasonable officer could have believed [the] arrest to be lawful," given "the information the [arresting] officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Here, as the complaint fails to allege facts that give rise to a false arrest, Penascino has failed to show a violation of a constitutional right. The Court need not reach the question of whether the right was clearly established. *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."). The Court holds that the officers are entitled to qualified immunity.

[5] "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)). It also can be made where an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes," *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (citing *City of St. Louis v. Praprotnik*, 485

*Dep't of Social Servs. of City of New York*, 436 U.S. 658, 695 (1978). However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A plaintiff may show that either an official policy of the municipality was the moving force behind the violation, or that the municipality had an informal custom such that it operated as the municipality's policy. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Monell*, 436 U.S. at 690. In either scenario, the plaintiff has the burden to show that the policy or custom was implemented or acquiesced in by a policymaker. *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). "[M]unicipal liability may be imposed for a single decision by municipal policymakers ... where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 480-83.

Further, if the alleged policy or custom at issue is a failure to train or supervise, the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary ...." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely

---

U.S. 112, 127 (1988)). Customs are "'practices of state officials ... so permanent and well settled' as to virtually constitute law." *Berg*, 219 F.3d at 275 (citations omitted).

13

... result in the violation of constitutional rights"—i.e., to show that "the need for more or different training [was] so obvious." *City of Canton*, 489 U.S. at 390.

The *Monell* inquiry asks whether a municipality, like the City, was deliberately indifferent to the risk of a constitutional violation. As noted, to sufficiently state a *Monell* claim, a plaintiff must identify the constitutional right at issue, identify the policy or custom at issue, identify the policymaker, demonstrate deliberate indifference or evidence of knowledge and acquiescence by the policymaker, and demonstrate causation. *Monell* claims are based on an underlying constitutional violation, and no such claim against the City exists.

Even if Penascino had come forth with a constitutional violation, he failed to plead an adequate factual basis that it was the direct result of the City's policy, custom or practice. None of Penascino's allegations in his complaint contain specific information regarding any policy, practice, custom or affirmative act taken by a policy-making official of the City against him. While Penascino lists twelve (12) PBP policies in Count 5 (violation of PBP internal policies), he does not allege that the City had a role in creating these policies or that they are unconstitutional. He simply alleges that the officers violated these policies. (ECF No. 1, ¶¶ 202-06). In his response to the City's motion, Penascino vaguely references a consent decree that the City was apparently once subjected to, and argues that one could construe that the City has a "custom, or practice of deprivation of rights." (ECF No. 26, p. 8). This is an insufficient allegation. It certainly does not serve as a hook for the City's liability. It is nothing more than a recitation of boilerplate language alleging a policy existed, without specification. The complaint contains no allegations that this unspecified consent decree caused Penascino's constitutional injury, and has not pleaded any facts to infer such a causal connection.

### 3. *Futility of Amendment*

The Court holds that amendment of the federal claims would be futile. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Hence, all of Williams' federal claims will be dismissed with prejudice.

### B. The Court will not exercise jurisdiction over the state-law claims.

A district court "may decline to exercise supplemental jurisdiction" over state-law claims if it "has dismissed all claims over which it has original jurisdiction[,]" 28 U.S.C. § 1367(c)(3), unless considerations of judicial economy, convenience, or fairness to the parties provide an affirmative justification for exercising supplemental jurisdiction. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). The Court finds that no factors or extraordinary circumstances exist that would warrant it exercising supplemental jurisdiction over Penascino's state-law claims (i.e., negligence; intentional infliction of emotional distress; defamation; false imprisonment; false arrest; equal protection; perjury; violations of PBP policies; and violations of state law). It will dismiss such claims without prejudice for Penascino to assert them in state court.

## IV. CONCLUSION

For these reasons, the Court will grant the motions to dismiss by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

\_\_\_11/12/25_____
Date